IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 1, 2008

## STATE OF TENNESSEE v. KEARY LEE CHEARIS, a/k/a KARRY CHEAIRS and "RABBIT"

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5827     J. Weber McCraw, Judge**

**No. W2007-01850-CCA-R3-CD  - Filed August 11, 2008**

The defendant, Keary Lee Chearis, was convicted of five counts of delivery of less than .5 grams of cocaine, a Class C felony, and sentenced as a Range III, persistent offender to twelve years on each count.  The trial court imposed partial consecutive sentencing for an effective sentence of twenty-four years.  On appeal, the defendant argues that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion to sever the offenses, ruling that the State properly authenticated video recordings offered as evidence, overruling his objection to the prosecutor's closing argument, enhancing his sentences beyond the statutory minimum, and imposing consecutive sentencing.  Following our review, we conclude that it was error to deny the defendant's motion to sever the offenses, but such error was harmless.  We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. McLIN, JJ., joined.

Kari I. Weber, Assistant Public Defender, for the appellant, Keary Lee Chearis.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Terry D. Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Investigator George Allen Freeman of the Fayette County Sheriff's Department testified that on March 30, 2006, he set up an undercover drug purchase with two confidential informants.  He met the informants at a rendevous point and searched them and their vehicle for illicit drugs.  He placed

a video camera in a trash can in the back of the truck and an open cell phone in the cab of the truck. He testified that he procured the videotape after the purchase was completed and that the recording accurately depicted the purchase as it took place.

Investigator Freeman testified that the drug purchase took place at "Bubba Wade's house" on Flippen Street in Somerville. Using binoculars, he observed the purchase from a concealed location approximately 100 yards east of the house. The informants stopped and spoke with a black male, who motioned toward the defendant. The informants drove up and spoke with the defendant and then backed their truck into the driveway. The defendant walked to a house farther down the street and motioned for the informants to come to him. When the informants arrived, the defendant walked up, placed his arm inside the truck, and then returned to the house as the informants drove off. Immediately thereafter, Investigator Freeman rendezvoused with the informants, who gave him a rock of cocaine. The State played for the jury a DVD containing the video recording of the purchase. Investigator Freeman testified that he was "a hundred percent" sure that the defendant was the person depicted in the video because he had known the defendant for years.

On cross-examination, Investigator Freeman testified that he instructed the informants not to target a particular individual but to go to Flippen Street and purchase drugs from whomever would sell them. He testified that the vehicle from which he observed the purchase had tinted windows. He stated that the video recording revealed the identity of the defendant but did not show what took place inside the truck.

Officer Brian Massey testified that his roles in the March 30 purchase were to listen to the audio recording of the purchase as it took place and to retrieve the cocaine from the rendezvous point following the purchase. He walked up to the informants' truck, and the informant who was driving handed him the cocaine. He took it to the police station, placed it in the evidence locker, and later transported it to the Tennessee Bureau of Investigation (TBI) laboratory for testing.

TBI Special Agent Forensic Scientist Dana Parmenter testified that she performed an administrative and technical review of the testing performed on the rock recovered from the March 30 purchase. The forensic chemistry report revealed that the rock weighed .3 grams and contained cocaine.

Somerville Police Chief Kenny Feathers testified that on April 9, 2006, he met with a confidential informant to set up an undercover drug purchase. There was not a specific target of his investigation, and he was unaware at that time that Investigator Freeman was also conducting an undercover operation on Flippen Street. He and another officer searched the informant's van for drugs and set up audio and video surveillance equipment in the vehicle. He gave the informant money with which to purchase drugs, and officers followed the informant to Flippen Street.

Chief Feathers testified that the April 9 purchase took place at 413 Flippen Street. He parked his vehicle at the intersection of Flippen Street and South Somerville Street and observed the purchase using binoculars. He identified the defendant as he walked up to the informant's vehicle.

He testified that, after the purchase, the informant placed the drugs in a cup holder. He met the informant, retrieved the drugs from the cup holder, and transported them to the police station.

Chief Feathers testified that he set up another purchase in the same location on April 10, 2006. He used his binoculars to identify the defendant as the seller. He again retrieved drugs from the cup holder in the informant's vehicle after the purchase.

On April 12, 2006, Chief Feathers set up another undercover purchase. He testified that because this purchase took place around 7:57 p.m., he instructed undercover Officer Jim Pierce to ride with the informant in case the quality of the video recording was poor because of darkness. This time, he observed the purchase from the intersection of Lynn and Flippen Streets, approximately fifty to seventy-five yards from the house, using a high-powered telescope. He saw the defendant walk to the vehicle. The informant handed the defendant a twenty-dollar bill, and the defendant walked away from the vehicle. The defendant returned to the vehicle and delivered cocaine to the informant, who handed it to Officer Pierce.

On May 5, 2006, Chief Feathers set up another undercover purchase using a truck belonging to the police department. The informant drove to Flippen Street, and the defendant approached the truck. The informant handed the defendant a twenty-dollar bill, and the defendant gave the informant some cocaine. After the purchase, Chief Feathers recovered cocaine from the truck's cup holder.

Chief Feathers testified that the videotapes used in the purchases had been in his "custody, care and control" since the purchases. He stated that he compiled the video recordings from the four purchases onto a single tape and that the recordings were true and accurate depictions of what he saw during the purchases. The State played the videotape for the jury. Chief Feathers testified that he was "a hundred percent" sure that the defendant was the person depicted on the tape delivering drugs to the informant.

On cross-examination, Chief Feathers testified that he and another officer searched the informant's van and the police department's truck for drugs before sending the informant to make the purchases, but he did not use a dog to search the vehicles for concealed narcotics. He testified that he personally searched the informant. He agreed that, in viewing the video recording from April 12, it was difficult to see the person outside the vehicle. He testified that in each of the four videos he could not see drugs being passed, but could see a hand-to-hand exchange. On redirect examination, he stated that he was able to identify the defendant on April 12 because headlights from other vehicles shone on the defendant while he stood at the informant's vehicle.

Somerville Police Department Investigator Donald Cockrell testified that he transported the drugs from the four undercover purchases to and from the TBI laboratory. TBI Special Agent Forensic Scientist Jessica Marquez testified that she tested the four drug samples and found that each weighed between .08 and .1 grams and contained cocaine. On cross-examination, Agent Marquez

testified that the samples could contain other substances because she tested only for the presence of cocaine and did not analyze the quantity of cocaine contained in each sample.

Somerville Police Officer Jim Pierce testified that he rode in the middle seat of a van with two confidential informants during the April 12 purchase. When they arrived at the location for the purchase, he saw the defendant approach the driver's side of the van. The informant who was driving handed money to the defendant, who told him to turn the van around and return. The informant did so, and the defendant brought back drugs and handed them to the informant.

The defendant elected not to testify or present proof. Following deliberations, the jury found the defendant guilty of five counts of delivery of less than .5 grams of cocaine. At the sentencing hearing, the State introduced a copy of the defendant's presentence report as an exhibit. Defense counsel acknowledged that the defendant was on probation when he committed these offenses.

In sentencing the defendant, the trial court stated:

> In determining the appropriate sentence for [the defendant], the Court does find that he was found guilty of five counts of delivery of a Schedule II substance in an amount less than .5 grams. The Court has considered the evidence which was presented at the trial. Now, at the sentencing hearing, the pre-sentence report has been received. Other than the one exception that the conviction noted on August 29, 1997, had been reversed by the Supreme Court, that report is received without other exception.
>
> The Court also looks to the principles of sentencing and arguments made as to sentencing, the nature and characteristics of the conduct involved, the evidence and information offered by the parties on any enhancing factors or mitigating factors. The Court also looks at any potential the defendant may have for rehabilitation or treatment. From all of which the Court does find that he is a Range III persistent offender. The Court does find that he does have a combination of sufficient felonies to place him within that range.
>
> As enhancing factors, which themselves are not essential elements of the offense, the Court finds that [the defendant] has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range. The Court also finds that the defendant before trial or sentencing has failed to comply with the conditions of a sentence involving release into the community. At the time the felony was committed, the Court finds that he was released on probation or [c]ommunity [c]orrections. . . .
>
> . . . .

. . . With regard to any mitigating factors, the only mitigating factor the Court could find would be that his conduct neither caused nor threatened any serious bodily injury. In determining whether to consider consecutive or concurrent sentencing, the Court finds in ordering consecutive sentences on part of these that the defendant is an offender whose record of criminal activity is extensive. The Court also finds that he is being sentenced for an offense which was committed while he was on probation.

. . . .

The Court does note during the viewing of the tapes that there were children about the neighborhood, that he apparently had no hesitation committing these crimes in the presence of children. In one video, very clearly, children rode by on their bicycles in view of the undercover camera.

From all of which, the Court hereby sentences [the defendant] to 12 years at 45 percent on Counts 1, 2 and 3. These will be running concurrently with each other, yet they will be running consecutive to Counts 4 and 5, also with a 12 year sentence at 45 percent. Counts 4 and 5 will be running concurrent to each other.

The court also ordered the defendant's sentences to be served consecutively to a prior sentence.

## ANALYSIS

The defendant argues that the trial court should not have admitted the video recordings of the offenses into evidence because, in his view, the State did not properly authenticate them. He also contends that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion to sever the offenses, overruling his objection to the State's closing argument, and imposing an effective twenty-four year sentence. The State responds that the trial court's ruling on the authentication of the videotapes was correct and that the evidence was sufficient to support the defendant's convictions. The State asserts that the defendant has waived the issue of severance by not supporting his argument with appropriate references to the record, or, alternatively, that the trial court properly denied the motion to sever. The State argues that the trial court's determinations regarding the State's closing argument and sentencing were correct. As we will explain, we agree with the defendant that the trial court erred in denying his motion to sever the offenses; however, we deem such error to be harmless and conclude that the defendant's remaining claims are without merit.

### I. Authentication of Videotapes

The defendant argues that the video recordings of the offenses were not properly authenticated and should not have been admitted into evidence. He asserts that Investigator Freeman and Chief Feathers, who authenticated the recordings, were unqualified to do so because they were

-5-

not present in the informants' vehicles, were viewing the scene from a distance, and were not watching the recordings as they were being made. Therefore, he claims, they could not verify that the recordings were fair and accurate representations of the scenes they purport to depict. The State responds that the recordings were properly authenticated.

Proffered evidence must be authenticated or identified as a condition precedent to admissibility. Tenn. R. Evid. 901(a). This requirement is satisfied "by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Id. Authentication may be established by the testimony of a witness with knowledge that a matter is what it is claimed to be. Id. R. 901(b)(1). The trial court is the "arbiter of authentication issues," and the court's discretion will not be disturbed absent clear mistake. Tenn. R. Evid. 901, Advisory Commission Cmts.; State v. Mickens, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003).

As we understand, the defendant argues that the only persons qualified to authenticate the recordings were the confidential informants, who did not testify. However, as we have set out, the Tennessee Rules of Evidence require only "evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Investigator Freeman testified that his recording accurately depicted the drug purchase as it took place. Chief Feathers testified that his recordings truly and accurately depicted what he saw during the drug purchases. Both witnesses testified that they helped set up the video equipment, visually observed the purchases from another vantage point, and retrieved the tapes immediately following the purchases. This testimony was sufficient to satisfy the authentication requirement.

## II. Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to support his convictions. Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of five counts of the knowing delivery of a controlled substance (cocaine). See Tenn. Code Ann. § 39-17-417(a)(2). He contends that the evidence was insufficient to support his convictions because the State did not offer the testimony of the confidential informants. However, the defendant has offered no authority in support of this claim, and we are aware of no such requirement. We will review the proof of each offense, viewed in the light most favorable to the State.

## A. The March 30th Purchase

Investigator Freeman testified that he monitored the transaction from a distance while listening on an open cell phone. He saw the defendant walk up to the informants' truck, then walk to a house farther down the street. The informants drove to this house, and the defendant reached inside the informants' truck. Investigator Freeman introduced a video recording of the purchase which was consistent with his testimony.[1] After the purchase, the informants met with Investigator Freeman and gave him a rock of cocaine. Investigator Freeman testified that he was "a hundred percent" certain that the defendant was the person depicted on the video recording.

## B. The April 9th and April 10th Purchases

Chief Feathers testified that he parked his vehicle at the intersection of Flippen and South Somerville Streets and observed these purchases using binoculars. He saw the defendant walk up to the informants' vehicle and, after each purchase, recovered a rock of cocaine from the informants. The video recordings made on these dates depict the same individual walking up to the informants' vehicle, reaching inside, receiving money, and walking away. Chief Feathers testified that he was "a hundred percent" sure that the defendant was the person depicted reaching into the informants' vehicle.

---

[1] We have reviewed each of the video recordings played for the jury.

-7-

### C. The April 12th Purchase

Chief Feathers observed this purchase from approximately fifty to seventy-five yards away, using a high-powered telescope because of the poor lighting conditions. He saw the defendant walk to the vehicle, receive money from the informant, walk away, and return to the vehicle and hand something to the informant. Officer Jim Pierce rode with the informants and testified that the defendant took money from the informant, walked away, and returned with cocaine which he handed to the informant.[2]

### D. The May 5th Purchase

Chief Feathers testified that the defendant approached the informant's truck, the informant handed the defendant a twenty-dollar bill, and the informant handed the defendant cocaine. He recovered a rock of cocaine from the informant following the purchase. The video recording is consistent with Chief Feathers' testimony.

We conclude that the evidence was sufficient to support each of the defendant's convictions for the knowing delivery of less than .5 grams of cocaine.

### III. Denial of Motion to Sever

Before trial, the defendant moved to sever the five offenses. The trial court denied the motion, finding that the offenses were part of a common plan and were properly joined for trial. The defendant argues that the trial court erred in this determination. He contends that the offenses were not part of a "common scheme or plan" and that the trial court did not find that evidence of one offense would be admissible in separate trials of the remaining offenses. The State argues that the defendant has waived this issue by failing to cite to the record in his appellate brief. Alternatively, the State argues that the trial court properly denied the motion to sever.

Tennessee Rule of Criminal Procedure 8(b) provides:

> Permissive Joinder of Offenses. – Two or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if:
>
> (1) the offenses constitute parts of a common scheme or plan; or
>
> (2) they are of the same or similar character.

---

[2] The video recording of this purchase is so dim that we were unable to determine if the person depicted reaching into the vehicle is the same person depicted in the other recordings.

Tennessee Rule of Criminal Procedure 14(b) provides in part:

Severance of Offenses.

(1) Involving Permissive Joinder of Offenses. – If two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.

"Decisions concerning consolidation and severance of offenses pursuant to [Tennessee] Rules of Criminal Procedure 8(b), 13 and 14(b)(1) will be reviewed for an abuse of discretion." State v. Denton, 149 S.W.3d 1, 12 (Tenn. 2004) (citations omitted). "An abuse of discretion in this context implies that the trial court applied an incorrect legal standard or reached a decision against logic or reasoning which caused an injustice to the complaining party." Id.

If the defendant moves for severance, the burden is on the State to show that the offenses are part of a common scheme or plan and the evidence of each offense would be admissible in the trial of the other. Denton, 149 S.W.3d at 13. Consolidation is proper only if the trial court finds that the State has met its burden of proof with regard to these two issues *and* that the probative value of the evidence of the other offenses is not outweighed by the prejudicial effect that admission would have on the defendant. Id.

Our supreme court has stated that there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999). In this case, the State argues that the defendant's conduct falls into the first category. To constitute a distinctive design or "signature" crimes, the offenses need not be completely identical, but the methods used in committing the offenses must have "such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." Id. The evidence of the other offenses must be so unique that proof that the defendant committed one offense fairly tends to establish that he also committed the other joined offenses. Denton, 149 S.W.3d at 14.

Initially, we must address the State's waiver argument. The State contends that the defendant waived this issue by providing "not a single reference to the record in support [of] his argument on this issue." We disagree. In his brief, the defendant cites legal authority in support of his argument and accurately states what occurred in the trial court. We decline to treat this issue as waived.

-9-

Furthermore, we disagree with the State's alternative position that the trial court properly denied the defendant's motion to sever.[3] At the hearing on the motion to sever, the State initially argued that the offenses were mandatorily joined under Tennessee Rule of Criminal Procedure 8(a), which requires joinder of offenses based upon the same conduct or arising from the same criminal episode. However, the defendant's five offenses were based on five separate instances of conduct which occurred on five separate days. Rule 8(a) did not mandate their joinder. See State v. Baird, 88 S.W.3d 617, 620-21 (Tenn. Crim. App. 2001) (defining "same conduct" and "same criminal episode" as used in Rule 8(a)).

Alternatively, the State argued that the offenses were permissively joined as part of a common scheme or plan because the offenses occurred within a five-week period and "[t]he officers were just going over there repeatedly, you know, and buying stuff." However, the State offered no proof that the methods used by the defendant in committing the offenses were so unusual or peculiar as to constitute a "distinctive design" or "signature crime." "[S]imply because the defendant may have committed a series of crimes 'does not mean that they are part of a common scheme or plan.'" Denton, 149 S.W.3d at 14 (citation omitted). Accordingly, the trial court erred in holding that the offenses were part of a common scheme or plan and denying the defendant's motion to sever.

This conclusion does not necessarily require reversal, however. No conviction shall be reversed on appeal except for errors that affirmatively appear to have affected the result of the trial on the merits. Tenn. R. Crim. P. 52(a). Error regarding the joinder and severance of offenses is neither structural, requiring automatic reversal, nor constitutional, requiring reversal unless harmless beyond a reasonable doubt. State v. Dotson, 254 S.W.3d 378, 388 (Tenn. 2008). The effect of a denial of the right to severance is weighed by the same standard as other non-constitutional evidentiary errors: the defendant must show that the error probably affected the judgment before reversal is appropriate. State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999). "[T]he line between harmless and prejudicial error is in direct proportion to the degree . . . by which the proof exceeds the standard required to convict." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979).

The defendant has not met his burden of showing that the error probably affected the judgment. As set out above, the proof of the defendant's guilt as to each offense was ample. We conclude that the error regarding severance was harmless, and the defendant is not entitled to relief.

## IV. Closing Argument

The defendant argues that the trial court erred in overruling his objection to portions of the State's closing argument. In State v. Thornton, 10 S.W.3d 229, 234-35 (Tenn. Crim. App. 1999), this court discussed the limits upon a prosecutor's final argument:

---

[3] We note that our review of this claim is hindered by the trial court's omission to make findings of fact or conclusions of law regarding its decision to deny the motion to sever.

In general, closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994). Arguments must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law. State v. Middlebrooks, 995 S.W.2d 550 (Tenn. 1999).

In assessing whether alleged misconduct constitutes reversible error, the court must determine whether the conduct had a prejudicial effect upon the verdict, in light of the following factors:

"(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case;

(2) the curative measures undertaken by the Court and the prosecution;

(3) the intent of the prosecutor in making the improper statement;

(4) the cumulative effect of the improper conduct and any other errors in the record; and

(5) the relative strength or weakness of the case."

State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (quoting Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

During the State's closing argument, the following exchange occurred:

[Counsel for the State]: Another thing that struck me, if you noticed in the video, it didn't matter how many kids were playing in the neighborhood, did it? Did you see that kid riding a bicycle –

[Defense Counsel]: Objection, Your Honor. Can we approach?

The Court: You may.

[Bench Conference, out of the hearing of the jury]

[Defense Counsel]: I object to that statement. It's absolutely irrelevant. It's inflammatory and it's seeking out sympathy from the jurors for those children playing on the street when this was going on. It is absolutely irrelevant and improper.

[Counsel for the State]: It's factual. It's evidence.

The Court: How is it irrelevant?

[Defense Counsel]: It's irrelevant because [the defendant] is charged with delivering cocaine and there is no testimony about the children being in the street or anything like that or that it's endangering children. It's irrelevant to what he's charged with.

[Counsel for the State]: It's either on the video or it isn't.

The Court: I think it's appropriate argument. I'll allow it. But, General, let's don't go beyond what you've already said. If you want to clean it up and then move on, but let's don't dwell into that.

[Bench Conference concluded]

[Counsel for the State]: There's an irresponsibility that comes with doing illegal activity, delivering drugs. But there's also an indifference. I'm not going to dwell on this, but there were children playing on this video that you saw or you didn't see. You saw it. You draw whatever conclusion you want from it, but it's a callous, knowing indifference.

The defendant claims that the prosecutor's references to the children who could be seen playing in the background of one of the recordings were an "attempt[] to play on the emotions of the jury members regarding children being exposed to crime" and that such argument was "inflammatory and exceeded the bounds of propriety." He argues that the trial court abused its discretion in finding that the argument was appropriate. We disagree. The prosecutor argued based on a fact in evidence. In the recordings, children *can* be seen riding bicycles and jumping on a trampoline. Further, the trial court ordered the prosecutor not to elaborate on his reference to the children after defense counsel objected. Viewed in context, the challenged remarks are not so inflammatory or prejudicial as to cast doubt on the outcome of the trial.

## V. Sentencing

The defendant argues that the trial court erred in sentencing him to twelve years on each count and imposing partial consecutive sentencing. When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993),

overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2006).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

## A. Application of Enhancement and Mitigating Factors

The defendant committed the offenses after June 7, 2005; therefore, he was sentenced under the 2005 amendments to Tennessee's sentencing laws. Under the 2005 amendments, in imposing a specific sentence the trial court is to consider, but is not bound by the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2006). The sentencing range for a Range III offender convicted of a Class C felony is ten to fifteen years. Tenn. Code Ann. § 40-35-112(c)(3) (2006). The trial court found two enhancement factors: the defendant has a previous history of criminal convictions

or criminal behavior in addition to those necessary to establish the appropriate range; and the defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8) (2006). The court found as a mitigating factor that the defendant's conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1) (2006).

The defendant argues that "the enhancement of his sentence in each count two years above the minimum sentence was excessive." He also argues that the trial court should have accorded more weight to the mitigating factor. This court has held that Tennessee's current sentencing law does not permit defendants to appeal the weight accorded to enhancement factors by a trial court. State v. Eric D. Charles, No. W2007-00060-CCA-R3-CD, 2008 WL 246023, at *4 (Tenn. Crim. App. Jan. 30, 2008). The defendant is not entitled to relief on this claim.

## B. Consecutive Sentencing

The defendant argues that the trial court erred in ordering that his sentences for Counts 1-3 run consecutively to his sentences for Counts 4-5 and that all of his sentences run consecutively to a prior sentence. A trial court, in its sound discretion, may impose consecutive sentencing in accordance with Tennessee Code Annotated section 40-35-115, if it finds any of the following criteria:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

The trial court found two criteria justifying consecutive sentencing: the defendant is an offender whose record of criminal activity is extensive, and the defendant is sentenced for an offense committed while on probation. The defendant argues that "the Court's findings regarding him having an extensive criminal history were inadequate" and that the imposition of consecutive sentencing is inappropriate. He also argues that the trial court's findings were inadequate to support running his sentences in this case consecutively to his prior sentence in Fayette County Case No. 5375 because the court did not explicitly recite its reasons for imposition of consecutive sentencing, as required by Tennessee Rule of Criminal Procedure 32(c)(2). However, at the sentencing hearing, the defendant admitted that he was on probation when he committed these offenses. This was sufficient to support the trial court's imposition of consecutive sentencing. The defendant is not entitled to relief.

## **CONCLUSION**

We conclude that the trial court erred in denying the defendant's motion to sever the offenses, but such error was harmless. In all other respects, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE

-15-